**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION**

| | |
|---|---|
| TRAVIS WAYNE GOODSELL,<br><br>                    Plaintiff,<br><br>v.<br><br>THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS,<br><br>                    Defendant. | **REPORT AND RECOMMENDATION TO (1) GRANT MOTION TO DISMISS (DOC. NO. 17) AND DISMISS AMENDED COMPLAINT (DOC NO. 10); (2) DENY MOTION FOR SUMMARY JUDGMENT (DOC. NO. 13); AND (3) DENY MOTION FOR IMMEDIATE FINAL JUDGMENT FOR PLAINTIFF WITH PREJUDICE (DOC. NO. 29)**<br><br>Case No.  2:19-cv-00711-CW-DAO<br><br>Judge Clark Waddoups<br><br>Magistrate Judge Daphne A. Oberg |

Pro se Plaintiff Travis Wayne Goodsell, proceeding *in forma pauperis*, brought this action against Defendant The Corporation of the President of the Church of Jesus Christ of Latter-day Saints (the "Church").  Three dispositive motions are now pending: (1) the Church's Motion to Dismiss (Doc. No. 17); (2) Mr. Goodsell's Motion for Summary Judgment (Doc. No. 13); and (3) Mr. Goodsell's Motion for Immediate Final Judgment for Plaintiff With Prejudice (Doc. No. 29).

The undersigned[1] has reviewed the pending motions and Mr. Goodsell's Amended Complaint (Doc. No. 10).  For the reasons explained below, the undersigned RECOMMENDS

---

[1] On October 15, 2019, the district judge referred this case to Magistrate Judge Furse under 28 U.S.C. § 636(b)(1)(B).  (Doc. No. 5.)  On May 15, 2020, this case was reassigned to the undersigned magistrate judge.  (Doc. No. 20.)

the district judge GRANT the Church's Motion to Dismiss (Doc. No. 17) and dismiss the Amended Complaint (Doc. No.10) with prejudice, DENY Mr. Goodsell's Motion for Summary Judgment (Doc. No. 13), and DENY Mr. Goodsell's Motion for Immediate Final Judgment for Plaintiff With Prejudice (Doc. No. 29).

## PROCEDURAL BACKGROUND

Mr. Goodsell filed his Complaint (Doc. No. 3) in this case on September 30, 2019. Mr. Goodsell also filed several addenda to his Complaint (Doc. Nos. 6 & 8), as well as a Motion for Official Service of Process (Doc. No. 4). On November 1, 2019, Magistrate Judge Furse held a status conference with Mr. Goodsell to inform him that his Complaint did not appear to state a claim for relief, and that he could not use addenda to supplement his Complaint. (Doc. No. 9.) At the conclusion of this conference, Magistrate Judge Furse gave Mr. Goodsell thirty days to amend his Complaint. (*Id.*) Mr. Goodsell filed his Amended Complaint (Doc. No. 10) on November 25, 2019. Since this time, he has also filed a Second Motion for Official Service of Process (Doc. No. 11), a Motion for Recusal of Judge Waddoups and Judge Furse (Doc. No. 12), a Motion for Summary Judgment (Doc. No. 13), and a Motion for Entry of Default (Doc. No. 14).

In April 2020, the Church appeared in this case and filed a Motion to Dismiss the Amended Complaint (Doc. No. 17), asserting the Amended Complaint is frivolous and fails to state a claim upon which relief can be granted. The Clerk of Court subsequently denied Mr. Goodsell's Motion for Entry of Default since the Church had appeared and filed a Motion to Dismiss (Doc. No. 18). The undersigned also denied as moot Mr. Goodsell's pending Motions for Official Service of Process for the same reasons (Doc. No. 22), and denied as moot the

Motion for Recusal of Judge Furse since the case had been reassigned to the undersigned magistrate judge (Doc. No. 21).

Instead of responding to the Church's Motion to Dismiss, Mr. Goodsell filed a combined Motion to/for: Final Default Judgment, Entry of Default, Strike Motion to Dismiss, Disbarment and Disciplinary Action (Doc. No. 23). The undersigned denied the request for entry of default since the Church had appeared and filed the Motion to Dismiss, terminated the request for final default judgment since no certificate of default had been entered by the court clerk, and denied the request for disbarment and disciplinary action since Mr. Goodsell failed to assert any cogent argument for relief or any request for sanctions within the court's authority to grant (Doc No. 24). The undersigned also denied the motion to strike, but gave Mr. Goodsell additional time— until June 19, 2020—to file a response to the Motion to Dismiss. (*Id.* at 2.) The next day, Mr. Goodsell filed yet another Motion to Strike the Motion to Dismiss (Doc. No. 25). The undersigned denied the Motion to Strike and reiterated that Mr. Goodsell had until June 19, 2020 to respond to the Motion to Dismiss (Doc. No. 26). Mr. Goodsell did not respond to the Motion to Dismiss by June 19 or at any time thereafter. Instead, Mr. Goodsell filed an amended motion seeking to "reinstate his M[otion] to Strike and Final Default Judgment." (Doc. No. 28 at 5.) Mr. Goodsell also filed a new Motion for Disbarment and Disciplinary Action of Defense Counsel (Doc. No. 27), and a Motion for Immediate Final Judgment for Plaintiff With Prejudice (Doc. No. 29).

## **LEGAL STANDARD**

Whenever the court authorizes a party to proceed *in forma pauperis*, the court may "dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). In determining whether a

complaint fails to state a claim for relief under this statute, the court employs the same standard used for analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See Kay v. Bemis*, 500 F.3d 1214, 1217–18 (10th Cir. 2007).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and further provides that "[e]ach allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  "Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted."  *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007).  At minimum, the plaintiff must "explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

To avoid dismissal, a complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'"  *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In reviewing a motion to dismiss, the court accepts as true the well-pleaded factual allegations and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.  *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).  But the court need not accept the plaintiff's conclusory allegations as true.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff must offer specific factual allegations to support each claim."  *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214

(10th Cir. 2011) (citing *Twombly*, 550 U.S. at 555).  A complaint survives a motion to dismiss only if it states a plausible claim for relief, although courts recognize that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context."  *Id.* at 1215.

A complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The court may "dismiss a claim based on an indisputably meritless legal theory" and dismiss "claims whose factual contentions are clearly baseless."  *Id.* at 327.  Factual contentions qualify as baseless when the facts alleged depict "fantastic or delusional scenarios" that "rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."  *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (internal quotation marks omitted).

Because Mr. Goodsell proceeds pro se, his filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers."  *Hall*, 935 F.2d at 1110.  Still, a pro se plaintiff must "'follow the same rules of procedure that govern other litigants.'"  *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).  Thus, a pro se "plaintiff still has 'the burden of alleging sufficient facts on which a recognized legal claim could be based.'"  *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (quoting *Hall*, 935 F.2d at 1110).  While the court must make some allowances for "the [pro se] plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements[,]" *Hall,* 935 F.2d at 1110, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a

plaintiff's behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (internal

quotation marks omitted).

## **DISCUSSION**

### **A.  Motion to Dismiss (Doc. No. 17) & 28 U.S.C. § 1915 Review**

The Church filed a brief Motion to Dismiss arguing generally that Mr. Goodsell's

Amended Complaint fails to comply with Rule 8's pleading requirements.  (Mot. to Dismiss 4–5,

Doc. No. 17.)  Specifically, the Church asserts that "[i]n spite of the Amended Complaint's

length, it does not provide [the Church] with any reasonable inference that it is liable for *any* of

the misconduct that [Mr. Goodsell] alleges," that "the allegations are incomprehensible at

best[,]" and that "[t]here is no connection between the alleged behavior of [the Church], and

harm to [Mr. Goodsell]."  (*Id.* at 5 (emphasis in original)).  The Church also argues that 28

U.S.C. § 1915 requires the court to dismiss Mr. Goodsell's Amended Complaint because it fails

to state a claim on which relief may be granted and because it is frivolous.  (*Id.* at 6–7.)  As

indicated above, Mr. Goodsell has not responded to the Motion to Dismiss even though the

undersigned provided him an extension of time until June 19, 2020 to do so.  (*See* Doc. Nos. 24

& 26.)

Mr. Goodsell's Amended Complaint contains a "Nature of the Case" section and eight

other sections that include factual allegations, each beginning with a statutory citation followed

by various "counts" of alleged wrongdoing by the Church.  (Am. Compl., Doc. No. 10 at 4–51.)

Mr. Goodsell also appears to assert that the Church violated 42 U.S.C. § 1985.  (*Id.* at 1, 3–4.)

Pursuant to 28 U.S.C. § 1915, the undersigned examined each section of the Amended

Complaint to determine whether Mr. Goodsell has stated a plausible claim upon which relief

may be granted against the Church.  As addressed in detail below, the undersigned concludes the Amended Complaint fails to state a plausible claim for relief and is frivolous.

### 1.  "Nature of the Case" Section

In his "Nature of the Case" section, Mr. Goodsell makes a number of vague and seemingly unrelated allegations of wrongdoing by the Church.  Specifically, he alleges that:

- The Church is "using the religion as a front for criminal activity."  (Am. Compl., Doc. No. 10 at 4.)

- Various "Domestic Terrorist Gangs and Groups," such as the "Mormon Mafia, Mormon White Supremacist Groups and Gangs, Mormon Polynesian Gangs, [and] Mormon Mexican and Latino Gangs" are agents of the Church.  (*Id.*)

- The Church arrested him and "disappeared" him for six years.  (*Id.* at 7.)

- The Church "mis-educated" him and "deceived [him] into participating in their crimes upon others."  (*Id.*)

- The Church had him "blacklisted" after he investigated Joseph Smith, Jr.'s "translations and methods."  (*Id.*)

- The Church has "altered documents to preserve the perception that the Corporation and the Religion are one and the same."  (*Id.*)

- He was "extorted and threatened to be silent" as to the Church's crimes and corruption.  (*Id.*)

- The Church "blacklisted [him] with a secret 'file,'" his research regarding the origin of the Bible "was suppressed and censored," and "eventually [he] was disappeared." (*Id.* at 8.)

- The Church is not "correct" about its origin story and interpretation of various religious texts.  (*Id.* at 8–9.)

- The Church is compromised and controlled by Russian President Vladimir Putin because its "CEO is doing business with Putin" and because it wants a temple in Russia.  (*Id.* at 10.)

Mr. Goodsell does not offer any specific factual allegations to support his conclusory assertions that the Church is involved in unspecified criminal activity, associated with terrorist groups, and compromised by Russia.  Nor does he explain how he has been injured by the Church's alleged criminal conduct and associations.  These allegations are bare assertions of wrongdoing without any factual development that would support a plausible claim for relief.

Mr. Goodsell also fails to explain his allegations that he was blacklisted, "disappeared," extorted, and threatened by the Church.  (*Id.* at 7–8.)  To the extent he is referring to his 2008 arrest on criminal charges and his subsequent confinement in the Utah State Hospital, which he describes in another section of the Amended Complaint (*see id.* at 21–24), these allegations are addressed in greater detail below.  *See* Section A.4, *infra.*  However, the conclusory statements in this section are insufficient to support a "reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.

Further, Mr. Goodsell neglects to offer a coherent explanation for how the Church has engaged in deception regarding its origins and corporate status or how he has been injured by the alleged deception.  To the extent Mr. Goodsell challenges the Church's internal doctrines regarding its origins and religious texts, these issues are not reviewable by a civil court.  Courts have long recognized that churches have "autonomy in making decisions regarding their own internal affairs."  *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 655 (10th

Cir. 2002).  "This church autonomy doctrine prohibits civil court review of internal church disputes involving matters of faith, doctrine, church governance, and polity."  *Id.* (quoting *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94, 116–17 (1952). Thus, Mr. Goodsell's allegations that various Church teachings are not "correct" fails to state a claim upon which relief can be granted.  (*See* Am. Compl., Doc. No. 10 at 8–9.)

Finally, many of the factual allegations in this section, including those relating to the Church's alleged criminal activity, the "Domestic Terrorist Gangs and Groups" that are allegedly agents of the Church, and President Putin's alleged control of the Church, are frivolous.  *See Denton*, 504 U.S. at 32–33 (indicating that factual contentions are baseless when the facts alleged depict "fantastic or delusional scenarios" that "rise to the level of the irrational or the wholly incredible . . ." (internal quotation marks omitted)).

### 2.  Allegations under 18 U.S.C. § 1961(4)

Mr. Goodsell next asserts allegations grouped into ten "counts" under 18 U.S.C. § 1961(4).  (Am. Compl., Doc. No. 10 at 11–14.)  This section provides a definition of "enterprise" under the Racketeer Influenced Corrupt Organizations Act ("RICO Act"), 18 U.S.C. §§ 1961, *et seq.*, but sets forth no acts that constitute an enforceable violation of law.  Section 1962 of the RICO Act, on the other hand, does prohibit certain conduct associated with a "pattern of racketeering activity," 18 U.S.C. § 1962(a)-(c), which is defined in the statute to include "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical," as well as other enumerated indictable acts, 18 U.S.C. § 1961(a).  The RICO Act also provides a civil cause of action to "[a]ny person injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).

<u>Counts 1, 3, 4, 5, 6, 7, and 9</u>

Mr. Goodsell alleges the Church has withheld information or deceived him about various aspects of its history and doctrines, as follows:

- Count 1 alleges the Church "claims 'True' Succession from the 1830 Organization" but "is not the legally recognized successor[]." (Am. Compl., Doc. No. 10 at 11.)

- Count 3 alleges the Church "neglected to explain to [him] and other Agents that the United States disincorporated the organization of the [Church] and took away [its] United States citizenship status." (*Id.*)

- Count 4 alleges the Church did not disclose its connections to Freemasonry and initiated him into a different Freemason lodge than that of Joseph Smith. (*Id.* at 12.)

- Count 5 alleges that by not informing Mr. Goodsell which Freemason Lodge he and others were giving oaths of loyalty to, the Church "deceived [him] as to which side of the current National Security Threat [he is] on," and that the Church is "supportive of America's coup and destruction." (*Id.*)

- Count 6 alleges the Church deceived Mr. Goodsell "into believing that a local mob of citizens murdered the original founder Joseph Smith, Jr[.] and his brother Hyrum," while the Church was actually responsible for the murders. (*Id.*)

- Count 7 alleges the Church has deceived Mr. Goodsell "as to their status once in the Salt Lake Valley under Brigham Young as the Kingdom of Deseret, a separate Nation from America, usurping the land of Mexico, and establishing an Authoritarian Monarchy." (*Id.* at 12–13.)

- Count 9 alleges the Church deceived Mr. Goodsell "into believing in a different Latter-Days as the promised Jesus Christ didn't return to Earth." (*Id.*)

Although Mr. Goodsell alleges in these counts that the Church has deceived him, he does not allege any injury to his business or property as required to pursue a private civil action under the RICO Act. *See* 18 U.S.C. § 1964(c). He also does not explain how the alleged deceptions have harmed him or violated his legally protected rights or interests. *See Nasious*, 492 F.3d at 1163. Moreover, he does not appear to allege any predicate act which would meet the definition of "racketeering activity" under the RICO Act. *See* 18 U.S.C. § 1961(a). Thus, the allegations in these counts are insufficient to state a plausible claim for relief under the RICO Act or any other cause of action.

Additionally, to the extent these counts challenge the Church's internal governance and religious doctrines, the church autonomy doctrine prevents review of such issues by a civil court. *See Bryce*, 289 F.3d at 655.

### Count 2

Mr. Goodsell alleges in Count 2 that the Church's "organizers led by Brigham Young did not follow the founding organization's process for succession of leadership after the murder of the Founder, Joseph Smith," and that the proper succession procedures have never been followed. (Am. Compl., Doc. No. 10 at 11.) These allegations concern the Church's internal governance, which is not reviewable by a civil court under the church autonomy doctrine. *See Bryce*, 289 F.3d at 655. Additionally, Mr. Goodsell fails to allege any injury based on the succession procedures. Thus, the allegations in Count 2 fail to state a claim for which this court may grant relief.

### Counts 8 and 10

In Count 8, Mr. Goodsell alleges Brigham Young "drastically altered the whole religion of the original Founder, Joseph Smith, Jr[.]," and that the Church deceived him "into believing

the religion [he] was practicing is the exact same religion of the original Founder's

organization." (Am. Compl., Doc. No. 10 at 13.) He further alleges the Church has placed him

on a blacklist and "punish[ed him] with assaults, threats, torture and disappearance because of

[his] adherence to the original Founder's religion." (*Id.*) Similarly, in Count 10, Mr. Goodsell

alleges that after he approached the Church in 1998 with a "decipherment" of papyri bought by

Joseph Smith, the Church "blacklisted [him] to keep their secret of not being Translators and in

2008 retaliated by ordering [his] disappearance." (*Id.* at 14.)

The allegations in Counts 8 and 10 regarding the Church's doctrines and teachings are

not reviewable by a civil court under the church autonomy doctrine, for the reasons stated above.

*See Bryce*, 289 F.3d at 655. Additionally, Mr. Goodsell's allegations of injury are conclusory

and fail to state a claim for relief that is plausible on its face. Mr. Goodsell alleges the Church

blacklisted, assaulted, threatened, and tortured him and ordered his disappearance, but he

provides no elaboration on the circumstances or any details about what allegedly occurred.

Thus, Mr. Goodsell has failed to plead "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

663.

For these reasons, Mr. Goodsell's allegations asserted under 18 U.S.C. § 1961(4) fail to

state a plausible claim upon which relief can be granted. Moreover, many of the allegations in

this section, including that the Church "is supportive of America's coup and destruction," (Am.

Compl, Doc. 10 at 12), and that the Church blacklisted Mr. Goodsell and "ordered [his]

disappearance" to "keep their secret of not being Translators," (*id.* at 14), are frivolous. *See*

*Denton*, 504 U.S. at 32–33.

### 3.   Allegations under 18 U.S.C. § 2381

Mr. Goodsell next makes allegations grouped into five counts under 18 U.S.C. § 2381. (Am. Compl., Doc. No. 10 at 14–17.)  This statute defines the crime of treason and provides criminal penalties, but it provides no civil causes of action.  *See* 18 U.S.C. § 2381.  Nevertheless, the undersigned evaluates Mr. Goodsell's allegations in this section of the Amended Complaint to determine if they state any cognizable claim for relief.

#### Count 1

Mr. Goodsell alleges the Church "does not celebrate their joining of the Union," but instead celebrates July 24 as a state holiday.  (Am. Compl., Doc. No. 10 at 14.)   He complains that he has been "forced to celebrate" that day as a holiday because "there are government and business closures and traffic limitations" on that day.  (*Id.*)

The Church's decisions about which holidays to celebrate are not reviewable under the church autonomy doctrine.  *See Bryce*, 289 F.3d at 655.  To the extent Mr. Goodsell challenges the State of Utah's recognition of a state holiday, the State of Utah is not a defendant in this case. Thus, these allegations fail to state a claim upon which relief can be granted against the Church.

#### Count 2

Mr. Goodsell alleges the Church "forced [him] to make a loyalty oath of secrecy under penalty of death" to the Church.  (Am. Compl., Doc. No. 10 at 14.)  He also claims the Church deceived him as to its status as "the Kingdom of Deseret, a separate Nation from America, usurping the land of Mexico, and establishing an Authoritarian Monarchy."  (*Id.* at 15.)

Mr. Goodsell has not explained how or when he was forced to take an oath under penalty of death.  His bare assertion, in the absence of any factual development, is insufficient to give rise to an inference that the Church is liable for any misconduct.  *See Iqbal*, 556 U.S. at 663.

Moreover, whether the Church asks its members to take an oath is a matter of internal church policy and doctrine and is not reviewable by this court under to the church autonomy doctrine. *See Bryce*, 289 F.3d at 655.  Mr. Goodsell also provides no explanation of how he has been harmed by the alleged deception as to the Church's status.  Therefore, Count 2 fails to state a claim upon which relief can be granted.

Count 3

Mr. Goodsell accuses the Church of "working with and doing the bidding of the Russians in destroying America and supporting the Russian's puppet President of the United States." (Am. Compl., Doc. No. 10 at 15.)  He names several politicians, including Senator Orrin Hatch, Senator Mitt Romney, and former governor Jon Huntsman Jr., as agents of either the Church, Russia, or both.  (*Id.*)  Mr. Goodsell claims he has been attacked by "Russian Trolls and hackers" for his online statements about the Church and the Russians, and he alleges someone is spying on him and attempting to steal his computer files.  (*Id.* at 15–16.)  He asserts that the Church is "betraying America" and "participating in threatening [his] life, liberty and property."  (*Id.* at 16.)

Mr. Goodsell omits any explanation of how the Church has threatened to deprive him of life, liberty, and property.  Nor does he explain how the Church is connected to or responsible for spying activities or the alleged attacks by Russian agents.  Therefore, these allegations fail to state a claim for relief against the Church.

Count 4

Mr. Goodsell alleges he was not informed Joseph Smith, Jr., was running for President at the time he was murdered or that Brigham Young ordered the murder of Joseph Smith, Jr.  (Am.

Compl., Doc. No. 10 at 16.)  Mr. Goodsell has not alleged any injury related to these conclusory

allegations, and therefore fails to state a claim for relief.

Count 5

Mr. Goodsell alleges the Church has been aware of "stellar signs" that indicate a threat to

the United States and has "not issued a clear warning to the Mormons."  (Am. Compl., Doc. No.

10 at 17.)  He also claims he has been victimized by "Russian cyber agents" and is "literally

being attacked by enemies both foreign and domestic."  (Id.)

Again, Mr. Goodsell fails to provide any information about the alleged attacks, when or

where they occurred, or how the Church is connected to them.  Therefore, these allegations fail

to state a plausible claim for relief against the Church.

As set forth above, Mr. Goodsell cannot state a claim under 18 U.S.C. § 2381 because it

is a criminal statute defining treason and providing for criminal penalties.  Moreover, his

allegations in this section fail to state a plausible civil claim upon which relief can be granted

against the Church.  Further, many of Mr. Goodsell's allegations in this section—such as the

allegation that the Church has failed to issue warnings of a threat based on stellar signs—are also

frivolous.  See Denton, 504 U.S. at 32–33.

**4.  Allegations under 18 U.S.C. § 2441**

Mr. Goodsell next makes allegations grouped into two counts under 18 U.S.C. § 2441.

(Am. Compl., Doc. No. 10 at 17–27.)  This statute defines a "war crime" and provides criminal

penalties, but it provides no civil cause of action.  18 U.S.C. § 2441.  Nevertheless, the

undersigned evaluates Mr. Goodsell's allegations in this section to determine if they state any

cognizable claim for relief.

<u>Count 1</u>

In Count 1, Mr. Goodsell describes the events of his life beginning with his birth in 1970. (Am. Compl., Doc. No. 10 at 20–24.)  He asserts grievances stemming from two main events.

First, he alleges his ex-wife fled the country with their "2 and ½ children" and property in 1997, that the Church and various state actors refused to help him, and that he was "financially ruined." (*Id.* at 20–21.)  He alleges the Utah Attorney General retaliated against him by facilitating passage of a law revoking the drivers' licenses of people not paying child support. (*Id.* at 21.)  He also asserts that the Church changed its "Temple Recommend Interview Questions" to require members to be current on child support and alimony payments, and that the State of Utah and the Church "came after [him] with the intent to financially destroy [him]." (*Id.*)

However, Mr. Goodsell's grievances regarding the Church's internal requirements of its members are not reviewable under the church autonomy doctrine.  *See Bryce*, 289 F.3d at 655. Further Mr. Goodsell has offered no connection between his financial circumstances and any action by the Church.  Therefore, he has failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

Second, Mr. Goodsell alleges the Utah Attorney General and the Church conspired to arrest him in 2008 on charges of making terrorist threats, after which he was incarcerated for six years in the Salt Lake County Jail, the "Supermax," and the Utah State Hospital.  (Am. Compl., Doc. No. 10 at 21–24.)  He alleges he experienced poor conditions at the Salt Lake County Jail, including spoiled food, a thin mattress, and denial of toilet paper and the ability to shower.  (*Id.* at 21–22.)  He alleges his attorneys and other witnesses told the judge he was not competent to

stand trial, and that Dr. Nancy Cohn, who was paid by the Church, diagnosed him with Schizophrenia Spectrum Disorder even though it is "not a real malady." (*Id.* at 22–23.) He alleges he was then transferred to the "State Hospital," where he was forced to take medication and denied unspecified religious materials. (*Id.* at 23–24.) He claims the Schizophrenia diagnosis was an "intentional attempt to murder [him]" because the medication he was administered damaged his kidney and caused a life-threatening complication when he was hospitalized in 2015. (*Id.* at 24.) Without providing any details regarding the Church's involvement, Mr. Goodsell claims the Church was "instrumental in [his] incarceration and disappearance." (*Id.*)

Again, Mr. Goodsell fails to explain a factual connection between the Church's conduct and the events related to his arrest and incarceration. The only specific connection he offers is that his doctor was paid by the Church, which is not explained further and does not, on its own, provide sufficient factual content to infer the Church is liable for any misconduct. *See Hogan*, 762 F.3d at 1104. None of the other entities or individuals identified in this section of Mr. Goodsell's Amended Complaint are defendants in this action, and Mr. Goodsell offers no coherent basis for holding the Church responsible for the events he describes.

For these reasons, the allegations in Count 1 fail to state a plausible claim for relief.

Count 2

In Count 2, Mr. Goodsell describes his experiences after his release from the state hospital in 2014. (Am. Compl., Doc. No. 10 at 24–27.) His allegations concerning the Church are that a "Bishop Hammond" refused to give him food assistance unless he "work[ed] off the hours" but still required him to tithe from his Social Security Disability benefits. (*Id.* at 25.) He also describes a disagreement with Bishop Hammond regarding a YouTube video he posted

about Joseph Smith, Jr., after which Bishop Hammond "kick[ed him] out of Church." (*Id.* at 25–26.) These allegations relate to the Church's internal policies regarding tithing, charitable food assistance, and membership, which are not are not reviewable by this court under the church autonomy doctrine. *See Bryce*, 289 F.3d at 655.

The other allegations in Count 2 describe grievances concerning Mr. Goodsell's mental health providers and housing, for which no connection to the Church is alleged. (Am. Compl., Doc. No. 10 at 24–27.) Accordingly, these allegations fail to state a claim for relief against the Church.

In sum, Mr. Goodsell cannot state a claim under 18 U.S.C. § 2441 because it is a criminal statute defining a "war crime" and providing for criminal penalties. Further, his allegations in this section fail to state a plausible claim upon which relief can be granted against the Church, and many of Mr. Goodsell's allegations in this section are irrational, and therefore, frivolous. *See Denton*, 504 U.S. at 32–33.

### 5.   Allegations under 18 U.S.C. §§ 1961-1967

Mr. Goodsell next quotes the RICO Act, 18 U.S.C. §§ 1961-1967, in its entirety, and then asserts allegations grouped into eleven counts. (Am. Compl., Doc. No. 10 at 27–41.) As set forth above, the RICO Act provides a civil cause of action to "[a]ny person injured in his business or property by reason of a violation of section 1962," 18 U.S.C. § 1964(c), which prohibits certain conduct associated with a "pattern of racketeering activity," *see* 18 U.S.C. § 1962(a)-(c). "Racketeering activity" is defined to include "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical," as well as other enumerated indictable acts. 18 U.S.C.

§ 1961(a).  The undersigned examines Mr. Goodsell's allegations to determine whether he states

a claim upon which relief may be granted.

Count 1

Mr. Goodsell restates the allegations regarding the circumstances of his arrest, which are

insufficient to state a claim against the Church for the reasons set forth above.  (*See* Am. Compl.,

Doc. No. 10 at 38.)  He also alleges that after he was released, "the assaults against [him] have

resumed," but he provides no further details and fails to allege any connection with the Church.

(*Id.*)  Accordingly, these allegations fail to state a plausible claim for relief against the Church.

Counts 2, 3, 4, 6, and 11

These counts describe Mr. Goodsell's disagreements with various alleged policies and

doctrines of the Church, including doctrines concerning tithing (Counts 2, 3, and 4), alleged

scriptural and doctrinal contradictions (Count 6), and the Church's requirements for its

missionaries (Count 11).  (Am. Compl., Doc. No. 10 at 38–41.)  Under the church autonomy

doctrine, these disputes are not reviewable by this court.  *See Bryce*, 289 F.3d at 655.

Counts 5, 9, and 10

Counts 5, 9, and 10 assert grievances related to Mr. Goodsell's alleged misdiagnosis by

Dr. Nancy Cohn.  (Am. Compl., Doc. No. 10 at 40–41.)  In Count 5 he alleges the Church "used

a Psychologist to misdiagnose [him] with a mental illness, cause malpractice[,] and wrongfully

drug [him]" and that the Church continues to pay Dr. Cohn.  (*Id.* at 40.)  In Count 9 he alleges

Dr. Cohn's misdiagnosis caused him to lose his driver's license and job at the Draper Post

Office.  (*Id.* at 41.)  In Count 10 he alleges that because of the misdiagnosis, he was "forced onto

Social Security and forced to apply for Disability," which is less than minimum wage.  (*Id.* at

41.)

Again, Mr. Goodsell offers no factual development to support his allegation that the Church is paying Dr. Cohn, nor does he explain how any alleged payment is connected to her diagnostic decisions.  Even if the court accepts as true the allegation the Mr. Goodsell was misdiagnosed, he never explains the causal connection between the Church's alleged payments to Dr. Cohn, the alleged misdiagnosis, and the loss of his driver's license and employment.  Nor does he explain how he is injured by receiving federal disability benefits.  Accordingly, Mr. Goodsell has failed to assert a plausible claim for relief against the Church based on Dr. Cohn's alleged misdiagnosis.

Count 7

Mr. Goodsell alleges he was led to believe credits he earned at Ricks College would transfer to the University of Lethbridge, but the university did not accept those credits and he had to take out loans to make up the lacking credit hours.  (Am. Compl., Doc. No. 10 at 40.)  However, he makes no connection between his educational grievances and the Church, and therefore these allegations fail to state a claim against the Church.  He then repeats his allegation that the Church blacklisted him and ordered his disappearance, (*id.* at 41), which is insufficient to state a claim for which relief can be granted for the reasons explained above.

Count 8

Mr. Goodsell alleges The Deseret News, which he describes as the Church's "State Press," was ordered to delete Mr. Goodsell's comments.  (Am. Compl., Doc. No. 10 at 41.)  He also alleges that because he was confined in the state hospital, he was not included in the 2010 census.  (*Id.*)

Mr. Goodsell identifies no injury arising the deletion of his comments, and fails to explain how the Church would be liable for actions of a newspaper, which is a separate legal

entity.  Likewise, as explained above, Mr. Goodsell has provided no factual allegations sufficient to demonstrate a connection between the Church and his confinement in the "State Hospital" or his inability to participate in the 2010 census.  Therefore, these allegations do not state a plausible claim for relief against the Church.

For these reasons, Mr. Goodsell's allegations asserted under 18 U.S.C. §§ 1961-1967 fail to state a plausible claim upon which relief can be granted.  Additionally, because many of the allegations in this section "rise to the level of the irrational," they are frivolous.  *See Denton*, 504 U.S. at 32–33.

### 6.  Allegations under 1 U.S.C. § 7

Mr. Goodsell next asserts allegations grouped into two counts under the Defense of Marriage Act, 1 U.S.C. § 7, which defines the terms "marriage" and "spouse" for purposes of federal statutes and regulations.  (Am. Compl., Doc. No. 10 at 42–43.)  Not only was this statute held unconstitutional in *United States v. Windsor*, 570 U.S. 744, 774 (2013), it provided no private cause of action.  Nevertheless, the undersigned examines Mr. Goodsell's allegations to determine whether they state any cognizable claim for relief.

In Count 1 Mr. Goodsell alleges that the Church has "contradictory policies" regarding polygamy.  (Am. Compl., Doc. No. 10 at 42.)  Mr. Goodsell then explains he was married civilly in Idaho to a woman named Stephanie, but the Church did not accept their union because they had had premarital sex.  (*Id.*)  Instead, Mr. Goodsell and Stephanie were required to marry again in a temple one year later.  (*Id.*)  Mr. Goodsell and Stephanie were divorced on August 6, 1998, and he alleges the church refused to recognize the divorce as valid until Stephanie requested a "Temple marriage cancellation."  (*Id.*)

In Count 2 Mr. Goodsell describes the difficulty he had in obtaining approval of his "Temple marriage request" to another woman, Karen Liebelt, in 2015. (*Id.* at 43.) However, he states they were indeed married on October 1, 2015, and the marriage was recognized by the State of Utah. (*Id.*) In January 2018, Mr. Goodsell and Ms. Liebelt divorced; Mr. Goodsell alleges the Church refused to accept the divorce, and still considers him and Ms. Liebelt to be married, although they are prohibited from having sexual relations. (*Id.*) Mr. Goodsell complains that he would not be able to remarry civilly or within the religion without becoming a bigamist in the eyes of the Church. (*Id.*)

These allegations concern the Church's internal policies regarding recognition of marriages and divorces and its doctrines regarding extramarital and premarital sex. These policies and doctrines are not subject to review by a civil court under the church autonomy doctrine. *See Bryce*, 289 F.3d at 655. Therefore, these allegations fail to state a claim for which relief can be granted.

### 7. Allegations under 18 U.S.C. § 242

Mr. Goodsell next asserts allegations grouped into eight counts under 18 U.S.C. § 242, which provides criminal penalties for a person acting under color of law to deprive a person of a right or privilege protected by the United States Constitution or federal laws. (Am. Compl., Doc. No. 10 at 43–44.) That statute contains no provision for private civil enforcement. *See* 18 U.S.C. § 242. Nevertheless, the undersigned examines Mr. Goodsell's allegation to determine whether he states any cognizable claim for relief.

In Counts 1–8, Mr. Goodsell alleges various individuals and entities refused to prosecute, investigate, or otherwise assist him with his "petition," including the Utah Attorney General's Office, the Federal Bureau of Investigation, the Utah State Bureau of Investigation, the West

Valley City mayor and police department, Officer Natalie Johanson, the United States

Department of Housing and Urban Development, and "[a]ll lawyers for the State of Utah." (Am.

Compl., Doc. No. 10 at 44.) However, Mr. Goodsell never explains what the "petition" was,

although he mentions filing complaints against Valley Behavioral Health related to his housing.

(*Id.*) He alleges he and others were threatened by another tenant and that no one took any action

to arrest or evict the tenant. (*Id.*) He also alleges Officer Johanson accused him of threatening

her and that she reached for her gun. (*Id.*)

The individuals and entities identified in this section are not defendants in this case, and

Mr. Goodsell makes no connection between these individuals and entities and the Church

sufficient to render the Church liable for the misconduct alleged. Thus, the allegations in this

section fail to state a claim for relief against the Church.

### 8.  Allegations under 18 U.S.C. § 247

Mr. Goodsell next asserts allegations grouped into four counts under 18 U.S.C. § 247,

which provides criminal penalties for damage to religious property and obstruction of persons in

the free exercise of religious beliefs. (Am. Compl., Doc. No. 10 at 45–46.) But this statute

contains no provisions for private civil enforcement. *See* 18 U.S.C. § 247. Nevertheless, the

undersigned examines Mr. Goodsell's allegation to determine whether he states any cognizable

claim for relief.

Count 1

In Count 1 Mr. Goodsell alleges the "Jail" deprived him of the ability to practice his

religion while he was incarcerated, and he repeats his allegation that the Church ordered his

arrest. (Am. Compl., Doc. No. 10 at 46.) However, he neglects to explain how he was deprived

of the ability to practice his religion, and he provides no facts giving rise to an inference that the

Church was involved in or responsible for his arrest or the alleged deprivation of his rights.  (*Id.*)
Therefore, these allegations fail to state a claim for relief against the Church.

Counts 2 and 3

In Counts 2 and 3 Mr. Goodsell alleges the "State Hospital" tried to "force drug" him
when he was fasting for religious reasons and denied him religious materials.  (Am. Compl.,
Doc. No. 10 at 46.)  Again, Mr. Goodsell fails to allege any involvement by the Church, and
therefore fails to state a claim for relief against the Church.

Count 4

In Count 4 Mr. Goodsell alleges the Church "blacklisted [him], had [him] disappeared
and attempted to murder [him] to cover-up the fact that they are not the same religion they
pretend to be."  (Am. Compl., Doc. No. 10 at 46.)  Again, Mr. Goodsell offers no explanation to
support these conclusory allegations, and therefore states no plausible claim for relief.

**9.  Allegations under 18 U.S.C. § 249**

Mr. Goodsell asserts allegations grouped into four counts under 18 U.S.C. § 249, which
defines and provides criminal penalties for hate crimes.  (Am. Compl., Doc. No. 10 at 46–50.)
However, this statute has no provision for private civil enforcement.  *See* 18 U.S.C. § 249.
Nevertheless, the undersigned examines Mr. Goodsell's allegations to determine whether he
states a cognizable claim for relief.

Count 1

Mr. Goodsell alleges the Church uses "coded hate speech" directed at him during public
General Conferences and teaches its "Agents" to perpetuate hate speech attacking him.  (Am.
Compl., Doc. No. 10 at 49.)  He alleges certain slogans are used to make him pay tithes and to
recruit children to the Church.  (*Id.*)

24

However, Mr. Goodsell never explains how he has been attacked or injured by the messages he describes, and the Church's doctrines regarding tithing and recruitment of members are not reviewable by a civil court.  *See Bryce*, 289 F.3d at 655.  Accordingly, these allegations fail to state a claim for relief against the Church.

Count 2

Mr. Goodsell alleges the Church "uses and teaches the use of White Supremacist speech in code."  (Am. Compl., Doc. No. 10 at 49.)  He alleges his mother described him as "sensitive" while testifying in his criminal case, and that this, coupled with "fake empathy" and words like "emotional," was a coded way of calling him "homosexual."  (*Id.*)  He alleges the Church "scared [his] parents into believing that [he] would turn gay."  (*Id.* at 50.)

To the extent Mr. Goodsell challenges the Church's internal doctrines regarding sexual orientation or white supremacist speech "in code," these doctrines are not subject to review by this court.  *See Bryce*, 289 F.3d at 655.  The undersigned can conceive of no cognizable clam based on his mother's use of the word "sensitive" to describe him in court testimony.  These allegations simply fail to state a claim for which relief can be granted.

Count 3

Mr. Goodsell claims in Count 3 that the Church uses and teaches abusive speech and "condemns, accuses[,] and victim blames" him.  (Am. Compl., Doc. No. 10 at 50.)  But he offers no details and specifies no related injury.  These conclusory allegations fail to state a claim for relief.

Count 4

Mr. Goodsell alleges the Church espouses self-reliance in order to refuse him monetary assistance.  (Am. Compl., Doc. No. 10 at 50.)  He claims it is "cruel and unusual" to expect him

25

to "live within [his] means."  (*Id.*)  Whether the Church teaches self-reliance or chooses to provide its members with monetary assistance is a matter of internal church policy and doctrine, not subject to review by a civil court.  *See Bryce*, 289 F.3d at 655.

As set forth above, Mr. Goodsell cannot state a claim under 18 U.S.C. § 249, which defines and provides penalties for hate crimes.  Further, his allegations in this section fail to state a plausible claim for relief against the Church.  Moreover, many of Mr. Goodsell's allegations in this section—including that the Church directs hate speech at him during General Conferences and that the Church uses and teaches the use of white supremacist speech in code—are frivolous.  *See Denton*, 504 U.S. at 32–33.

### 10. Claims under 42 U.S.C. § 1985

Mr. Goodsell asserts jurisdiction is proper under 42 U.S.C. § 1985 and quotes this statute in its entirety at the beginning of his Amended Complaint.  (Am. Compl., Doc. No. 10 at 1, 3–4.)  Although Mr. Goodsell fails to include any factual allegations in the same section as his recitation of § 1985, the undersigned examines whether the allegations in the remainder of the Amended Complaint, as set forth above, state a claim for relief under each subsection of § 1985.

To state a § 1985 claim, a plaintiff must allege a conspiracy of two or more persons aimed at either preventing a federal officer from performing her duties (§ 1985(1)); intimidating a party, witness, or juror involved in a case (§ 1985(2)); obstructing justice to deny a person equal protection of the laws (§ 1985(2)), or depriving a person of his rights and privileges to deny him equal protection of the laws (§ 1985(3)).  42 U.S.C. § 1985.  To state a valid claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants."  *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (discussing conspiracy under § 1983).  "Conclusory allegations that the defendants acted in

concert or conspired without specific factual allegations to support such assertions are insufficient."  *Archuleta v. City of Roswell*, 898 F. Supp. 2d 1240, 1248 (D.N.M. 2012).

Section 1985(1)

Section 1985(1) prohibits a conspiracy to "prevent, by force, intimidation, or threat," a federal officer from discharging her duties or a conspiracy to injure a federal officer on account of her lawful discharge of her duties.  Mr. Goodsell makes no allegations related to performance of duties by a federal officer.  Therefore, he has failed to state a claim for relief under § 1985(1).

Section 1985(2)

A claim under § 1985(2) requires three elements: "(1) a conspiracy, (2) to deter attendance in court or testimony by force or intimidation or to injure a witness for having appeared in court or testified, and (3) injury to the plaintiff."  *Hogan*, 762 F.3d at 1113.  "[A] claim fails when the complaint does not allege either that the defendant's actions in some way were designed to intimidate or deter the plaintiff from appearing in a judicial proceeding, or to injure a person for appearing in court."  *Id.* at 1114 (citations omitted).

Mr. Goodsell alleges the Utah Attorney General "conspir[ed] with the [Church] and resolv[ed] to arrest [him] on 3 counts of Terrorist Threat; but with the intention to never go to trial, but disappear [him] from society by indefinitely locking [him] up in the Utah State Hospital."  (Am. Compl., Doc. No. 10 at 21.)  He asserts that the Church "[has] been paying the evaluator chosen to recommend [his] incarceration in the State Hospital."  (*Id.*)  He also alleges that his attorneys and other witnesses told the judge that he was not competent to stand trial.  (*Id.* at 22–23.)  In a different section of his Amended Complaint, he alleges, without further explanation, that he was "extorted and threatened to be silent" as to the Church's crimes and corruption.  (*Id.* at 7.)

The conclusory assertion that the Church conspired with the Utah Attorney General to "disappear" him is insufficient to state a claim under 42 U.S.C. § 1985(2). Mr. Goodsell fails to allege any specific facts showing "an agreement and concerted action" between the Utah Attorney General and the Church that would support a claim of conspiracy. *Tonkovich*, 159 F.3d at 533. As set forth above, Mr. Goodsell fails to explain any connection between the Church and his arrest, incarceration, and commitment to the State Hospital, other than alleging that the doctor who evaluated him has been paid by the Church. This allegation alone is insufficient to support an inference of a conspiracy involving the Church to intimidate or deter him from appearing in court.

Additionally, he fails to allege any plan or action by the Church aimed at injuring a witness or deterring witness testimony "by force or intimidation." 42 U.S.C. § 1985(2). The Church's alleged payments to his doctor do not qualify as acts of force, intimidation, or injury. And although he mentions other witness testimony related to his criminal charges, Mr. Goodsell makes no allegations of force, intimidation, or injury associated with their testimony.

Finally, Mr. Goodsell's allegation that he was extorted and threatened by the Church is unexplained and unsupported by any specific factual allegations in the Amended Complaint, and he does not allege a conspiracy involving extortion or threats.

For these reasons, Mr. Goodsell's allegations in the Amended Complaint fail to state a plausible claim for relief under 42 U.S.C. § 1985(2).

Section 1985(3)

Section 1985(3) prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To support this claim,

28

the plaintiff must allege "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Additionally, the conspiracy must be "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus[.]'" *Id.* (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *see also Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743, 746 (10th Cir. 1980) ("[T]he plaintiff must be a member of a statutorily protected class, and the actions taken by defendant must stem from plaintiff's membership in the class."). The Tenth Circuit has recognized that class-based animus under § 1985 may be based on membership in a minority religious group. *See Taylor v. Gilmartin*, 686 F.2d 1346, 1357–58 (10th Cir. 1982).

But Mr. Goodsell never alleges membership in a protected class, nor does he assert facts showing the Church's alleged wrongdoing was motivated by class-based animus. Mr. Goodsell offers various reasons related to religion to explain why the Church allegedly "blacklisted" and "disappeared" him, including alleging it did so because of his investigation of Joseph Smith, Jr.'s "translations and methods" (Am. Compl., Doc. No. 10 at 7); to "suppress[] and censor[]" his research regarding the origin of the Bible (*id.* at 8); to punish him for his "adherence to the original Founder's religion" (*id.* at 13); and "to cover-up the fact that they are not the same religion they pretend to be" (*id.* at 44). However, he does not allege the Church's actions were motivated by animus toward any particular religious group of which he is a member. Additionally, as set forth above, he fails to allege specific facts regarding "an agreement and concerted action" between the Church and others to support the existence of a conspiracy. *See Tonkovich*, 159 F.3d at 533.

For these reasons, the allegations in the Amended Complaint do not state a claim for relief under 42 U.S.C. § 1985(3).

**11. Conclusion**

For the reasons explained above, Mr. Goodsell's allegations in his Amended Complaint fail to comply with Rule 8's pleading requirements.  Many of the statutes under which Mr. Goodsell purports to bring claims are criminal statutes with no provision for civil enforcement.  Moreover, none of the allegations in Mr. Goodsell's Amended Complaint state a plausible claim for relief against the Church.  Further, as described above, many of Mr. Goodsell's allegations are frivolous.  Accordingly, the undersigned RECOMMENDS the district judge GRANT the Church's Motion to Dismiss.  Further, the undersigned RECOMMENDS the district judge DISMISS Mr. Goodsell's Amended Complaint in its entirety and with prejudice.

**B.  Motion for Summary Judgment (Doc. No. 13)**

Mr. Goodsell filed a motion arguing summary judgment is appropriate in this case on all of his claims because the assigned judges failed to rule on his Motion for Recusal of Judges Waddoups and Furse (Doc. No. 12) within ten days of filing.  (Mot. for Summ. J., Doc. No. 13 at 4.)  He claims that by failing to respond to the recusal motion within this timeframe, the judges became "Acting Defense Counsel," and conceded to the claims asserted against the Church.  (*Id.* at 3–4.)

As an initial matter, the Motion for Summary Judgment does not adhere to any requirements for a summary judgment motion, including that such a motion set forth all undisputed material facts and include an appendix of supporting evidence.  *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."); DUCivR 56-1(b) ("A motion for summary judgment must . . . be supported by an Appendix of Evidence[.]"); DUCivR 56-1(b)(3) (indicating that a summary judgment motion must contain "[a] concise statement of the undisputed material facts that entitle the moving party to judgment as a matter of law.  Only those facts necessary to decide the motion should be included in this section.  The moving party must cite with particularity the evidence in the Appendix of Evidence that supports each factual assertion.").

Further, Mr. Goodsell's argument that the assigned judges' purported failure to respond to a motion for recusal within a specified timeframe results in a concession to his claims in this case lacks any legal basis and is frivolous.  Finally, because Mr. Goodsell has failed to state a claim for relief against the Church, as detailed above, Mr. Goodsell cannot show he is "entitled to judgment as a matter of law" on any of his claims.  *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

Therefore, the undersigned RECOMMENDS the district judge DENY Mr. Goodsell's Motion for Summary Judgment (Doc. No. 13).

## C.  Motion for Immediate Final Judgment for Plaintiff With Prejudice (Doc. No. 29)

Mr. Goodsell also filed a Motion for Immediate Final Judgment for Plaintiff With Prejudice (Doc. No. 29) under 18 U.S.C. § 1512.  The statute under which Mr. Goodsell seeks relief is a criminal statute relating to tampering with a witness, victim, or informant.  *See* 18

U.S.C. § 1512.  This statute does not provide a basis for final judgment in a civil case.  *See id.*

Further, for the reasons addressed above, Mr. Goodsell is not entitled to entry of a final judgment

in his favor since he states no plausible claim for relief in this case.

Therefore, the undersigned RECOMMENDS the district judge DENY Mr. Goodsell's

Motion for Immediate Final Judgment for Plaintiff With Prejudice (Doc. No. 29) as well.

## **RECOMMENDATION**

For the reasons set forth above, the undersigned magistrate judge respectfully

RECOMMENDS the district judge GRANT the Church's Motion to Dismiss (Doc. No. 17) and

dismiss Mr. Goodsell's Amended Complaint (Doc. No. 10) with prejudice, DENY Mr.

Goodsell's Motion for Summary Judgment (Doc. No. 13), and DENY Mr. Goodsell's Motion for

Immediate Final Judgment for Plaintiff With Prejudice (Doc. No. 29).

The court will send copies of this Report and Recommendation to all parties, who the

court hereby notifies of their right to object to the same.  *See* 28 U.S.C. § 636(b)(1); Fed R. Civ.

P. 72(b).  The parties must file any objection to this Report and Recommendation within fourteen

(14) days of service thereof.  *Id.*  Failure to object may constitute waiver of objections upon

subsequent review.

DATED this 6th day of July, 2020.

BY THE COURT:

*Daphne A. Oberg*

Daphne A. Oberg
United States Magistrate Judge